JOHN A. O'MALLEY (Bar No. 101181)
AARON D. GOPEN (Bar No. 268451)
**FULBRIGHT & JAWORSKI L.L.P.**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone:     (213) 892-9200
Facsimile:     (213) 892-9494
jomalley@fulbright.com
agopen@fulbright.com

MARC L. DELFLACHE *(admitted pro hac vice)*
DUSTIN MAUCK *(admitted pro hac vice)*
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:     (214) 855-8000
Facsimile:     (214) 855-8200
mdelflache@fulbright.com
dmauck@fulbright.com

RICHARD S. ZEMBEK *(admitted pro hac vice)*
**FULBRIGHT & JAWORSKI L.L.P.**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:     (713) 651-5151
Facsimile:     (713) 651-5246
rzembek@fulbright.com

Attorneys for Defendant PAPA JOHN'S USA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., | Case No.  3:12-cv-00729-JLS-NLS |
| Plaintiff, | **DEFENDANT PAPA JOHN'S USA, INC.'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| PAPA JOHN'S USA, INC. , | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

DOCUMENT PREPARED
ON RECYCLED PAPER

1
2
3
4
5

PAPA JOHN'S USA, INC.,

          Counterclaim Plaintiff,

    v.

AMERANTH, INC.,

          Counterclaim Defendant.

Case No.  3:12-cv-00729-JLS-MDD

**DEMAND FOR JURY TRIAL**

6

7
8
9
10

      In response to Plaintiff Ameranth, Inc.'s ("Ameranth") Motion to Dismiss (Dkt. No. 19), Defendant Papa John's USA, Inc. ("Papa John's") hereby amends its answer to Ameranth's Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  Like paragraph numbers are used for reference purposes.

11

<strong>PARTIES</strong>

12
13
14

    1.    Papa John's admits that Ameranth is a Delaware corporation but is without current knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 of the Complaint, and therefore denies same.

15
16
17

    2.    Papa John's admits that it is a Kentucky corporation having a principal place of business in Louisville, Kentucky.  Papa John's denies the remaining allegations of Paragraph 2 of the Complaint.

18

<strong>JURISDICTION AND VENUE</strong>

19
20

    3.    Papa John's admits that the Complaint purports to be an action for patent infringement arising under the Patent Laws of the United States.

21

    4.    Papa John's admits the allegations in Paragraph 4 of the Complaint.

22
23

    5.    Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5 of the Complaint, and therefore denies the allegations.

24
25

    6.    Papa John's admits that this Court has personal jurisdiction over Papa John's. Papa John's denies the remaining allegations of Paragraph 6 of the Complaint.

26
27

    7.    Papa John's admits venue is proper in this Judicial District with respect to Papa John's, but denies that such venue is convenient.

28

DOCUMENT PREPARED
ON RECYCLED PAPER

52183128.3                      - 2 -                 CASE NO.  3:12-cv-00729-JLS-NLS
PAPA JOHN'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

**BACKGROUND**

8.    Papa John's denies the allegations of Paragraph 8 of the Complaint.

9.    Papa John's denies the allegations of Paragraph 9 of the Complaint.

10.    Papa John's denies the allegations of Paragraph 10 of the Complaint.

11.    Papa John's denies "The adoption of Ameranth's technology by industry leaders and the wide acclaim received by Ameranth for its technological innovations are just some of the many confirmations of the breakthrough aspects of Ameranth's inventions." Papa John's is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 of the Complaint, and therefore denies same.

**RELATED CASE PREVIOUSLY FILED**

12.    Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint, and therefore denies same.

13.    Papa John's admits Ameranth, via its Infringement Contentions, has asserted claims 12, 13, 14, and 15 of U.S. Patent No. 6,384,850 ("the '850 Patent"), and claims 11, 12, 13, and 15 of U.S. Patent No. 6,871,325 ("the '325 Patent") against Papa John's in *Ameranth, Inc. v. Pizza Hut, Inc. et al.*, Case No. 3:11-cv-01810-JLS-NLS.   Papa John's denies the remaining allegations of paragraph 13 of the Complaint.

**COUNT I**

**Alleged Patent Infringement (U.S. Patent No. 8,146,077)**

**(35 U.S.C. § 271)**

14.    Papa John's reiterates and hereby incorporates the answers set forth in Paragraphs 1-13 above as if fully set forth herein.

15.    Papa John's admits that U.S. Patent No. 8,146,077 ("the '077 Patent") purports on its face to have been issued March 27, 2012 and to be titled "Information Management and Synchronous Communications System with Menu Generation, and Handwriting and Voice Modification of Orders."  Papa John's admits that a copy of the '077 Patent was attached to the Complaint as Exhibit A.  Papa John's denies the remaining allegations of Paragraph 15 of the Complaint.

16.    Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16 of the Complaint, and therefore denies same.

17.    Papa John's admits it has a website and a mobile app that permit customers to place orders for pizzas.   Otherwise, Papa John's denies the allegations of Paragraph 17 of the Complaint.

18.    Papa John's denies the allegations of Paragraph 18 of the Complaint.

19.    Papa John's denies the allegations of Paragraph 19 of the Complaint.

20.    Papa John's denies the allegations of Paragraph 20 of the Complaint.

21.    Papa John's denies the allegations of Paragraph 21 of the Complaint.

22.    Papa John's denies the allegations of Paragraph 22 of the Complaint.

23.    Papa John's denies the allegations of Paragraph 23 of the Complaint.

24.    Papa John's denies the allegations of Paragraph 24 of the Complaint.

25.    Papa John's denies the allegations of Paragraph 25 of the Complaint.

26.    Papa John's denies the allegations of Paragraph 26 of the Complaint.

## PRAYER FOR RELIEF

27.    Papa John's denies that Ameranth is entitled to the requested relief.

28.    To the extent not expressly admitted above, the factual allegations contained in the Complaint are denied.

## DEMAND FOR JURY TRIAL

29.    Papa John's acknowledges that Ameranth has demanded a jury trial.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

30.    Papa John's does not infringe any claim of the '077 Patent.

### Second Affirmative Defense

31.    Based upon the information currently available to Papa John's, and Ameranth's apparent constructions, the claims of the '077 Patent are invalid as anticipated under 35 U.S.C. § 102 and/or for obviousness under 35 U.S.C. § 103.

32.    One or more claims of the '077 Patent is invalid in view of one or more prior art

1   references, including, for example, U.S. Patent No. 7,069,228 to Rose et al. ("Rose"), U.S. Patent

2   No. 6,415,138 to Sirola et al. ("Sirola"), and U.S. Patent No. 6,356,543 to Hall et al. ("Hall").

3   *See* Rose, **Ex. 12**; Sirola, **Ex. 13**; Hall, **Ex. 14**.

4         33.   Rose was filed April 29, 1999 and claims priority to a provisional patent

5   application filed on April 30, 1998.  Rose is prior art to the '990 Application.

6         34.   Rose teaches a software product that enables creation of websites having a web-

7   based reservation booking system.  Using the booking system, customers can access, select, and

8   make reservations or appointments in real-time.   Further, the software product provides a

9   centralized information management system that can be used for reservations received by various

10  means, e.g., telephone, walk-in, and Internet.  As the software product is used, information is

11  captured about its use in a database module to create groups or "communities" of customers based

12  on, for example, profiles or demographics.  Each merchant has a database, which collectively

13  form a larger database in communication with a server.  The server coordinates communications

14  between merchants, customers, and communities, and also stores a master copy of each database.

15  *See, e.g.*, Fig. 4.  A cache copy of the reservation information is locally stored.   In one

16  embodiment, the server hosts a web site accessible by various users.   Various portions of the

17  software product are visible through web page windows of the hosted web site. *See, e.g.*, Figs.

18  5A-22.

19        35.   Sirola was filed November 19, 1998 and claims priority to FI Patent Application

20  No. 974347 filed November 27, 1997. Sirola is prior art to the '990 Application.

21        36.   Sirola teaches a wireless communication device having a display area that is

22  capable of connecting to the Internet, that includes properties typical of personal computers.

23        37.   Hall was filed November 25, 1997, which is its priority date. Hall is prior art to the

24  '990 Application.

25        38.   Hall teaches a method and system that enables a mobile phone user to select one or

26  more service preferences for the mobile phone via a display.  The mobile phone is connected to

27  the Internet and capable of displaying a web page.  The web page can also be accessed from a

28  personal or business computer.  Applications and user preferences are saved to a server.  The

DOCUMENT PREPARED
ON RECYCLED PAPER

1   mobile phone has memory such that selected applications from the software product can be

2   downloaded from the server and stored at the mobile device or fetched in real-time, resulting in a

3   customizable display at the mobile device.  At Figure 1, for example, Rose illustrates a wireless

4   handheld device in communication with a server, database, the Internet, and a desktop computer.

5       39.    Papa John's incorporates by reference the allegations of all subsequent paragraphs

6   of these Affirmative Defenses and the Counterclaims as if fully set forth herein, and specifically

7   including further discussion of Rose, Sirola, and Hall, and the allegations contained in Papa

8   John's Fourth Counterclaim (paragraphs 91-132).

9                          **Third Affirmative Defense**

10      40.    All claims of the '077 Patent are unenforceable due to inequitable conduct during

11  the prosecution of the '077 Patent committed by Keith R. McNally ("McNally"), a named

12  inventor of the '077 Patent and president of Ameranth, Inc., and/or Michael D. Fabiano

13  ("Fabiano"), prosecution counsel for Ameranth and the '077 Patent.

14      41.    McNally and/or Fabiano committed one or more acts of inequitable by

15  withholding from the U.S. Patent Office ("Patent Office") information material to the

16  patentability of the '077 Patent with a specific intent to deceive the Patent Office.   This material

17  information includes prior art references Rose, Sirola, and Hall, as well as analysis by the Patent

18  Office (Examiner Wu) regarding the same.

19      42.    Papa John's incorporates by reference the allegations of all preceding and

20  subsequent paragraphs of these Affirmative Defenses and the Counterclaims as if fully set forth

21  herein, and specifically including further discussion of Rose, Sirola, and Hall, and the allegations

22  contained in Papa John's Fourth Counterclaim (paragraphs 42-132).

23                         **Fourth Affirmative Defense**

24      43.    Ameranth is estopped from construing a valid claim, if any, of the '077 Patent to

25  be infringed literally or under the Doctrine of Equivalents due to admissions and/or statements

26  made (a) to the Patent Office during prosecution of the '077 Patent or related patent applications,

27  (b) in the specification and claims of the '077 Patent, respectively, and/or (c) during prior

28  litigation of patents related to the '077 Patent.

**Fifth Affirmative Defense**

44.    Ameranth is not entitled to any injunctive relief because any injury to Ameranth is neither immediate nor irreparable, and Ameranth has adequate remedies at law.

**Sixth Affirmative Defense**

45.    The Complaint fails to adequately set forth allegations sufficient to support its claims of infringement and therefore fails to state a claim under 35 U.S.C. § 271(a), (b), and (c).

**Seventh Affirmative Defense**

46.    The claims of the '077 Patent are invalid for failure to satisfy the written description and/or enablement requirements of 35 U.S.C. § 112.

47.    For example, each independent claim of the '077 Patent includes the following limitation: "wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user interface screens from at least one other wireless handheld computing device in the system." '077, 16:57-61 (Claim 1), 18:43-47 (Claim 9), 20:5-9 (Claim 13).

48.    The specification of the '077 Patent does not describe this claim limitation.

49.    The specification of the '077 Patent does not enable this claim limitation.

50.    The claims of the '077 Patent are therefore invalid for failure to satisfy the written description and enablement requirements of 35 U.S.C. § 112.

DOCUMENT PREPARED
ON RECYCLED PAPER

# FIRST AMENDED COUNTERCLAIMS TO

## PLAINTIFF'S COMPLAINT

Papa John's USA, Inc. ("Papa John's") alleges as follows for its First Amended Counterclaims ("Counterclaims") against Ameranth, Inc. ("Ameranth").

## THE PARTIES

1. Papa John's is a Kentucky corporation having a principal place of business in Louisville, Kentucky.

2. On information and belief, Ameranth is a Delaware corporation having a principal place of business at 5820 Oberlin Drive, Suite 202, San Diego, California 92121.

## JURISDICTION AND VENUE

3. Ameranth filed a Complaint against Papa John's in this Court.

4. Ameranth alleges in its Complaint that it is the lawful owner by assignment of all right, title, and interest in and to U.S. Patent No. 8,146,077 (issued March 27, 2012) ("the '077 Patent") titled "Information Management and Synchronous Communications System with Menu Generation, and Handwriting and Voice Modification of Orders."

5. Ameranth alleges in its Complaint that Papa John's has infringed the '077 Patent.

6. An actual and justiciable controversy exists between Ameranth and Papa John's.

7. This Court has subject matter jurisdiction over these Counterclaims under 28 U.S.C. § 1338(a), the Patent Laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400.

9. Ameranth has appeared in this lawsuit, is represented by counsel, and has submitted to the jurisdiction of this Court.

## BACKGROUND

10. Ameranth has a history of litigious behavior, and has asserted patents related to the '077 Patent, the '325 Patent, the '850 Patent, and U.S. Patent No. 6,982,733 ("the '733 Patent"), against Papa John's and numerous other defendants in multiple cases more than once in a court of

law:

1

2    a)    Cause no. 2:07-cv-00271, in the Eastern District of Texas (filed June 28, 2007),

3    asserting the '325 Patent, the '850 Patent and the '733 Patent (the "*First Ameranth Action*").

4    b)    Cause no. 2:10-cv-00294, in the Eastern District of Texas (filed August 13, 2010),

5    asserting the same patents ("the *Second Ameranth Action*").

6    c)    Cause no. 3:11-cv-1810, in the Southern District of California (filed August 15,

7    2011), asserting the '325 and '850 Patents ("the *Third Ameranth Action*").

8    d)    Cause No. 3:12-cv-00729, in the Southern District of California, asserting the '077

9    Patent ("the *Fourth Ameranth Action*").

10    The '077 Patent is purported to be on its face a continuation of the '733 Patent and a

11    Continuation-in-part of the '850 Patent.

12    **FIRST COUNTERCLAIM**

13    **(Declaratory Judgment of Non-Infringement of the '077 Patent)**

14    11.    Papa John's incorporates by reference the allegations of all preceding and

15    subsequent paragraphs of these Counterclaims as if fully set forth herein.

16    12.    Papa John's does not infringe the '077 Patent because it does not make, use, sell,

17    offer for sale or license an "ordering system/product/service" that includes each and every

18    element of the claims of the '077 Patent.

19    13.    For example, claims 1 and 9, and the claims depending therefrom, require "said

20    master menu is capable of being configured for display to facilitate user operations in at least one

21    window of said first graphical user interface as cascaded sets of linked graphical user interface

22    screens."

23    14.    Papa John's does not make, use, sell, offer for sale or license an "ordering

24    system/product/service . . . enabling product ordering and other hospitality functions" that

25    includes a master menu capable of being configured for display to facilitate user operations in at

26    least one window of said first graphical user interface as cascaded sets of linked graphical user

27    interface screens.

28    15.    For example, claims 1 and 9, and the claims depending therefrom, require "menu

DOCUMENT PREPARED
ON RECYCLED PAPER

1 categories, menu items and modifiers comprising the programmed handheld menu configuration

2 are synchronized in real time with analogous information comprising the master menu."

3      16.    Papa John's does not make, use, sell, offer for sale or license an "ordering

4 system/product/service . . . enabling product ordering and other hospitality functions" where

5 menu categories, menu items, and modifiers comprising the programmed handheld menu

6 configuration are synchronized in real time with analogous information comprising the master

7 menu.

8      17.    For example, claims 1 and 9, and the claims depending therefrom, require a system

9 "enabled for . . . the capability of real time synchronous transmission of the programmed

10 handheld menu configuration to the wireless handheld computing device."

11      18.    Papa John's does not make, use, sell, offer for sale or license an "ordering

12 system/product/service . . . enabling product ordering and other hospitality functions" that

13 includes the capability of real time synchronous transmission of the programmed handheld menu

14 configuration to the wireless handheld computing device.

15      19.    For example, claims 1 and 9, and the claims depending therefrom, require a system

16 "enabled to automatically format the programmed handheld menu configuration for display as

17 cascaded sets of linked graphical user interface screens appropriate for a customized display

18 layout of at least two different wireless handheld computing device display sizes in the same

19 connected system."

20      20.    Papa John's does not make, use, sell, offer for sale or license an "ordering

21 system/product/service . . . enabling product ordering and other hospitality functions" that is

22 enabled to automatically format the programmed handheld menu configuration for display as

23 cascaded sets of linked graphical user interface screens appropriate for a customized display

24 layout of at least two different wireless handheld computing device display sizes in the same

25 connected system.

26      21.    For example, claims 1, 9, and 13, and the claims depending therefrom, require a

27 system in which a "cascaded set of linked graphical user interface screens for a wireless handheld

28 computing device in the system includes a different number of user interface screens from at least

1    one other wireless handheld computing device in the system."

2       22. Papa John's does not make, use, sell, offer for sale or license an "ordering

3    system/product/service . . . enabling product ordering and other hospitality functions" in which

4    cascaded set of linked graphical user interface screens for a wireless handheld computing device

5    in the system includes a different number of user interface screens from at least one other wireless

6    handheld computing device in the system.

7       23. For example, claim 13, and the claims depending therefrom, require a system

8    "enabled to automatically format a programmed handheld configuration for display as cascaded

9    sets of linked graphical user interface screens appropriate for a customized display layout of at

10   least two different wireless handheld computing device display sizes in the same connected

11   system."

12      24. Papa John's does not make, use, sell, offer for sale or license an "ordering

13   system/product/service . . . enabling product ordering and other hospitality functions" that is

14   enabled to automatically format a programmed handheld configuration for display as cascaded

15   sets of linked graphical user interface screens appropriate for a customized display layout of at

16   least two different wireless handheld computing device display sizes in the same connected

17   system.

18      25. Papa John's has not infringed and is not infringing, either literally or under the

19   Doctrine of Equivalents, directly or indirectly, by inducement or contribution, any valid and

20   enforceable claim of the '077 Patent.

21      26. Papa John's has not willfully infringed and is not willfully infringing any valid and

22   enforceable claim of the '077 Patent.

23            **SECOND COUNTERCLAIM**

24        **(Declaratory Judgment of Invalidity of the '077 Patent)**

25      27. Papa John's incorporates by reference the allegations of all preceding and

26   subsequent paragraphs of these Counterclaims, including the allegations contained in its Fourth

27   Counterclaim (paragraphs 42-132), as if fully set forth herein.

28      28. The '077 Patent is invalid for failure to comply with one or more of the

1  requirements of U.S. Patent Laws, including, but not limited to, 35 U.S.C. §§ 102, 103, and/or

2  112 in view of one or more prior art references, including, for example, Rose, Sirola, and Hall.

3  *See* Rose, **Ex. 12**; Sirola, **Ex. 13**; Hall, **Ex. 14**.

4         29.    Rose, Sirola, and Hall are each prior art to the '990 Application.  *See* Paragraphs

5  33, 35, 37.

6         30.    Rose teaches a software product that enables creation of websites having a web-

7  based reservation booking system.  Using the booking system, customers can access, select, and

8  make reservations or appointments in real-time.  Further, the software product provides a

9  centralized information management system that can be used for reservations received by various

10  means, e.g., telephone, walk-in, and Internet.  As the software product is used, information is

11  captured about its use in a database module to create groups or "communities" of customers based

12  on, for example, profiles or demographics.  Each merchant has a database, which collectively

13  form a larger database in communication with a server.  The server coordinates communications

14  between merchants, customers, and communities, and also stores a master copy of each database.

15  *See, e.g.*, Fig. 4.  A cache copy of the reservation information is locally stored.  In one

16  embodiment, the server hosts a web site accessible by various users.  Various portions of the

17  software product are visible through web page windows of the hosted web site. *See, e.g.*, Figs.

18  5A-22.

19         31.    Sirola teaches a wireless communication device having a display area that is

20  capable of connecting to the Internet, that includes properties typical of personal computers.

21         32.    Hall teaches a method and system that enables a mobile phone user to select one or

22  more service preferences for the mobile phone via a display.  The mobile phone is connected to

23  the Internet and capable of displaying a web page.  The web page can also be accessed from a

24  personal or business computer.  Applications and user preferences are saved to a server.  The

25  mobile phone has memory such that selected applications from the software product can be

26  downloaded from the server and stored at the mobile device or fetched in real-time, resulting in a

27  customizable display at the mobile device.  At Figure 1, for example, Rose illustrates a wireless

28  handheld device in communication with a server, database, the Internet, and a desktop computer.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    33.    In its Complaint, Ameranth fails to identify any particular claim of the '077 Patent

2    that Papa John's is alleged to have infringed.

3    34.    Ameranth must first fulfill its obligation to specifically identify claims of the '077

4    Patent allegedly infringed by Papa John's to provide Papa John's with a fair opportunity to

5    respond to the allegations of the Complaint, and particularly, identify additional relevant prior art

6    in support of its counterclaims and affirmative defenses.

7                                    **THIRD COUNTERCLAIM**

8                                     **(Exceptional Case)**

9    35.    Papa John's incorporates by reference the allegations of all preceding and

10   subsequent paragraphs of these Counterclaims as if fully set forth herein.

11   36.    Ameranth knew, or should have known, that the claims of the Patents-in-Suit were

12   not infringed by Papa John's, were invalid under the requirements of the U.S. Patent Laws,

13   including but not limited to 35 U.S.C. §§ 102, 103, and/or 112 when this lawsuit was

14   commenced, and/or were unenforceable.

15   37.    Upon information and belief, Ameranth failed to conduct a proper pre-suit

16   investigation.

17   38.    Rather than conduct a pre-suit investigation, Ameranth rushed to the courthouse to

18   file this lawsuit the same day as the '077 Patent issued (March 27, 2012).

19   39.    A proper pre-suit investigation would have revealed the unenforceability,

20   invalidity, and non-infringement of the '077 Patent. *See, e.g.,* First Counterclaim (paragraphs 11-

21   26); Second Counterclaim (paragraphs 27-34); Fourth Counterclaim (paragraphs 42-132); and

22   Fifth Counterclaim (paragraphs 133-151).

23   40.    Thus, the pursuit of Ameranth's claims against Papa John's is unjustified.

24   41.    This is an exceptional case within the meaning of 35 U.S.C. § 285.

25                                    **FOURTH COUNTERCLAIM**

26                                     **(Inequitable Conduct)**

27   42.    Papa John's incorporates by reference the allegations of all preceding and

28   subsequent paragraphs of these Counterclaims as if fully set forth herein.

43.     All claims of the '077 Patent are unenforceable due to inequitable conduct during the prosecution of the '077 Patent by Michael D. Fabiano ("Fabiano") (of Mazzarella Caldarelli LLP), who intentionally withhold material prior art from the U.S. Patent Office ("Patent Office") with a specific intent to deceive the Patent Office.

44.     The '077 Patent was filed in the Patent Office on April 22, 2005 as U.S. Patent Application No. 11/112,990 ("the '990 Application"). The '770 Patent was issued by the Patent Office on March 27, 2012, and is titled "Information Management and Synchronous Communications System with Menu Generation, and Modification of Orders."

### *Fabiano's Knowledge of Prior Art Rose, Sirola, and Hall*

45.     On February 2, 2010, Keith R. McNally ("McNally"), who was then Chief Executive Officer of Ameranth, executed a power of attorney appointing Fabiano as counsel for assignee, Ameranth, during prosecution of the '990 Application before the Patent Office. *See* Power of Attorney, **Ex. 1**.

46.     Therefore, Fabiano was prosecution counsel for the '990 Application at least between February 2, 2010 and March 27, 2012 (the date the '990 Application/'770 Patent issued).

47.     Fabiano was significantly involved in the prosecution of the '990 Application. For example, during prosecution of the '990 Application, Fabiano participated in interviews with the Examiner Matthew J. Brophy ("Examiner Brophy"). *See* Patent Office Summary of November 16, 2010 Interview, **Ex. 2** (McNally and Fabiano); Patent Office Summary of April 8, 2010 Interview, **Ex. 3** (McNally and Fabiano).

48.     This case was filed by Ameranth in this Court on the same day that the '077 Patent issued, March 27, 2012.

49.     Fabiano is counsel of record for Ameranth in this case.

50.     Ameranth is the assignee of U.S. Patent Application No. 11/190,633 ("the '633 Application"). **Ex. 4**. The '633 Application was filed July 26, 2005 and is titled, "Information Management and Synchronous Communications System." **Ex. 4**.

51.     On July 2, 2010, McNally, who was then Chief Executive Officer of Ameranth, executed a power of attorney appointing Fabiano as counsel for assignee, Ameranth, during

DOCUMENT PREPARED
ON RECYCLED PAPER

1   prosecution of the '633 Application before the Patent Office.  *See* July 2, 2010 Power of
2   Attorney, **Ex. 5**.

3       52.    On February 21, 2012, just before this case was filed, McNally executed a
4   Revocation of Power of Attorney for Fabiano and appointed a different prosecution counsel for
5   the '633 Application. *See* February 21, 2012 Revocation of Power of Attorney, **Ex. 6.**

6       53.    Therefore, Fabiano was prosecution counsel for the '633 Application at least
7   between July 2, 2010 and February 21, 2012.

8       54.    Further, Fabiano was prosecution counsel for the pending '633 Application (July
9   2, 2010 to February 21, 2012) during the same time Fabiano was prosecution counsel for the then
10  pending '990 Application (February 2, 2010 to March 27, 2012), for an overlapping period of
11  more than 19 months.

12      55.    Fabiano was significantly involved in the prosecution of the '633 Application,
13  including the preparation of responses to office actions traversing prior art.

14      56.    During prosecution of the '077 Patent, McNally executed a declaration in an
15  attempt to establish a priority date for the application that matured into the '077 Patent of August
16  1998.  *See*  Declaration Under 37 C.F.R. § 1.131 by McNally (January 22, 2009), **Ex. 7**;
17  Supplemental Declaration Under 37 C.F.R. § 1.131 by McNally (August 19, 2009), **Ex. 8**; *see*
18  *also* Declaration Under 37 C.F.R. § 1.132 by Kathie Sanders ("Sanders"), former Director of
19  Marketing for Ameranth (August 6, 2009), **Ex. 9**.

20      57.    McNally attempted to establish a priority date for the application that issued as the
21  '077 Patent by declaring to the Patent Office:

22          I make this Declaration to establish conception of the invention claimed in this application
23          in the United States at least as early as August 1998, well prior to June 17, 1999, the filing
24          date of U.S. Patent Publication No. 200020059405 to Angwin et al. ("Angwin
25          publication") and June 29, 1999, the apparent priority date of U.S. Patent No. 6,973,437 to
26          Olewicz et al. – both of which were cited by the Examiner against the pending claims of
27          the present application – coupled with actual reduction to practice of the claimed
28          invention from September 1998 and subsequent constructive reduction to practice of the

1    claimed invention as a filed U.S. patent application on September 21, 1999.

2    **Ex. 7** at para. 2.

3    58.    The Patent Office, represented by Examiner Brophy, considered the January 22,

4    2009 Declaration of McNally (**Ex. 7**), but rejected it as "ineffective to overcome the USPN

5    6,973,437 Olewicz and US PG Pub 20020059405 Angwin references" because the "evidence

6    submitted [was] insufficient to establish applicant's alleged actual reduction to practice of the

7    invention . . . after the effective date of the USPN 6,973,437 Olewicz and US PG Pub

8    20020059405 Angwin references."   Office Action (June 26, 2009), **Ex. 10** at 2.

9    59.    More specifically, Examiner Brophy noted that the January 22, 2009 Declaration

10   of McNally (**Ex. 9**) failed to establish actual reduction to practice of certain claim limitations,

11   including "menu items, menu categories, modifiers and sub-modifiers," and "real-time

12   synchronization" and further failed to "establish diligence from a date prior to the date of

13   reduction to practice of the USPN 6,973,437 Olewicz  and US PG Pub 20020059405 Angwin

14   references to either a constructive reduction to practice or actual reduction to practice.  **Ex. 10** at

15   3.

16   60.    Thereafter, McNally and another Ameranth employee, Sanders, submitted

17   additional declarations (**Exs. 8 and 9**) to the Patent Office.

18   61.    Again, the Patent Office, represented by Examiner Brophy, rejected the claims of

19   the '077 Patent, and stated,

20         The declarations by Keith McNally and Kathie Sanders filed August 21, 2009 under 37

21         CFR 1.131 to overcome the Olewicz (USPN 6,973,437), the only reference previously

22         applied that was not available under 35 U.S.C. 102(b), a statutory bar, is moot as the

23         grounds of rejection based on Olewicz have been withdrawn in view of the applicant's

24         claim amendments.  Insofar as they might be applied, the affidavits are ineffective in

25         antedating the references currently applied under 102(e) as they do not cover in sufficient

26         detail the period prior to September 1998.

27   Office Action (January 20, 2010), **Ex. 11** at 2.

28   62.    On February 2, 2012, Examiner Brophy issued a notice of allowance after entering

DOCUMENT PREPARED
ON RECYCLED PAPER

1   an earlier Examiner's amendment. The '077 Patent issued on March 27, 2012.

2           63.     Therefore, the Patent Office never accepted the representations of Fabiano,

3   Ameranth, McNally, et al. regarding the date of conception of the subject matter claimed in the

4   '077 Patent.

5           64.     Fabiano was familiar with the prosecution history of both the '990 Application and

6   '633 Application, as well as the failed attempt to prove a conception date earlier than September

7   21, 1999 for the '990 Application.

8           65.     The '077 Patent purports on its face to be a continuation of an application filed on

9   November 1, 2001 and a continuation-in-part of an application filed on September 21, 1999.

10          66.     Therefore, the earliest potential priority date for any subject matter claimed in the

11  '990 Application/'077 Patent is September 21, 1999.

12          67.     During prosecution of the '633 Application and the '990 Application, Fabiano had

13  knowledge of Rose. *See generally* Rose, **Ex. 12.**

14          68.     Rose was filed April 29, 1999 and claims priority to a provisional patent

15  application filed on April 30, 1998. Rose is prior art to the '990 Application.

16          69.     During prosecution of the '633 Application and the '990 Application, Fabiano had

17  knowledge of Sirola. *See generally* Sirola, **Ex. 13.**

18          70.     Sirola was filed November 19, 1998 and claims priority to FI Patent Application

19  No. 974347 filed November 27, 1997.  Sirola is prior art to the '990 Application.

20          71.     During prosecution of the '633 Application and the '990 Application, Fabiano had

21  knowledge of Hall. *See generally* Hall, **Ex. 14.**

22          72.     Hall was filed November 25, 1997, which is its priority date. Hall is prior art to the

23  '990 Application.

24          73.     Therefore, Rose, Sirola, and Hall are prior art to the '077 Patent under 35 U.S.C. §

25  102(b).

26          74.     Fabiano, as prosecution counsel for the '633 Application and the '990 Application,

27  had knowledge that Rose, Sirola, and Hall were prior art to claims of the '990 Application.

28          75.     During the time in which the '990 Application was still pending, Fabiano had

DOCUMENT PREPARED
ON RECYCLED PAPER

1  knowledge that Rose, Sirola, and Hall were material to patentability of the claims of the '990

2  Application (and thus, the '770 Patent).

3      76.    Rose and Sirola were cited by the Patent Office, represented by Examiner Rutao

4  Wu ("Examiner Wu"), as a basis for a rejection of claims of the '633 Application in an Office

5  Action mailed January 7, 2010, and again in an Office Action mailed October 5, 2010. *See* Office

6  Action (January 7, 2010), **Ex. 15** at 2-11; Office Action (October 5, 2010), **Ex. 16** at 4-13.

7      77.    In the January 7, 2010 Office Action, for example, Examiner Wu discussed in

8  detail how the combination of Rose and Sirola taught the limitations of the claims in the '633

9  Application. *See* **Ex. 15**.

10     78.    In summary, Examiner Wu argued that Rose disclosed serving hospitality

11 information in accordance with the '633 Application's claims, and it would have been obvious to

12 use the wireless handheld device (smart phone) with an integrated web browser as disclosed in

13 Sirola to display the information provided by the Rose web server. **Ex. 15** at 2-11.

14     79.    On July 2, 2010, Fabiano filed a response to the January 7, 2010 Office Action on

15 behalf of Ameranth, traversing the Rose and Sirola references for the pending claims of the '633

16 Application, including amending the claims. Request for Continued Examination Under 37

17 C.F.R. 1.114 & Response and Amendment of Claims (July 2, 2010), **Ex. 17**.

18     80.    The July 2, 2010 Response amended claims 77 and 97, adding that hospitality

19 information is displayed on "non PC standard display sizes" including display on the wireless

20 handheld computing device. **Ex. 17** at 3, 6.   The July 2, 2010 Response presented detailed

21 arguments attempting to overcome rejections in view of Rose, Sirola, and other cited art. *See id.*

22     81.    Despite Ameranth's arguments, Examiner Wu again rejected all claims of the '633

23 Application in an office action dated October 5, 2010, relying on the combination of Rose and

24 Sirola. *See* **Ex. 16**.

25     82.    On October 26, 2010, Fabiano filed a response to the October 5, 2010 Office

26 Action. *See* Response to Office Action (October 26, 2010), **Ex. 18**.

27     83.    The October 26, 2010 response presented detailed arguments attempting to

28 distinguish the '633 Application over Rose, Sirola, and other cited art. *See* **Ex. 18**.

DOCUMENT PREPARED
ON RECYCLED PAPER

84.    On November 16, 2010, Fabiano held a telephonic interview with Examiner Wu. *See* Supplemental Response to Non-Final Office Action (December 8, 2010), **Ex. 19** at 1.

85.    On December 8, 2010, Fabiano filed a supplemental response "reflect[ing] the Examiner's request for Applicants to more clearly explain [certain arguments] concerning the Rose reference." **Ex. 19** at 9.   The December 8, 2010 supplemental response also attempted to distinguish Ameranth's alleged invention over Sirola and other cited art. *See id.* at 12-35.

86.    On February 15, 2011 Examiner Wu issued a Final Office Action rejecting all pending claims of the '633 Application. Final Office Action (February 15, 2011), **Ex. 20**.

87.    The February 15, 2011 rejection maintained the combination of Rose and Sirola. **Ex. 20** at 3-13.  In addition, Examiner Wu rejected the claims of the '633 Application under a new combination of Rose, Sirola, and Hall. *Id.* at 13-20.

88.    Ameranth appealed, filing its Appeal Brief on March 30, 2011.  Examiner Wu filed an Examiner's Answer on June 6, 2011. Examiner's Answer, **Ex. 21**.  Ameranth filed its Reply Brief on August 4, 2011.  The appeal is still pending.  Upon information and belief, none of the briefing of this appeal was submitted to the Patent Office with regards to the prosecution of the '990 Application.

89.    During prosecution of the '633 Application and the '990 Application, Fabiano had knowledge of specific contents of Rose, Sirola, and Hall that were material to the patentability of the '990 Application claims.

90.    Rose, Sirola, and Hall are not cumulative of the prior art made of record during prosecution of the '990 Application.  Specifically, Examiner Wu stands behind his rejection of the claims in the '633 Application in view of Rose, Sirola, and Hall.  The Examiner maintained these rejection in view of Rose, Sirola, and Hall despite having nearly the same prior art on the record for the '990 Application. *See, e.g.,* **Ex. 20**; **Ex. 21**.  Further, as discussed below, the claim limitations relied upon by the Examiner as a basis for allowance of the '990 Application/'770 Patent are taught by Rose, Sirola, and Hall.   *See, e.g.,* Paragraphs 91-103.  Therefore, Rose, Sirola, and Hall are not cumulative of the art of record in the '990 Application/'770 Patent.

DOCUMENT PREPARED
ON RECYCLED PAPER

52183128.3                                  - 19 -                        CASE NO.  3:12-cv-00729-JLS-NLS

PAPA JOHN'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

1         *Specific Contents of Rose, Sirola, and Hall Material to the Patentability of the*

2                 *Claim Elements Relied Upon in the Notice of Allowance*

3         91.      Rose, Sirola, and Hall were material to the patentability of the claims of the '990

4    Application.  This is reflected at least by the fact that their contents disclose the claim elements

5    that Examiner Brophy relied upon in the Notice of Allowability as the basis for allowance of the

6    '077 Patent.

7         92.      The Notice of Allowability for the '077 Patent issued by Examiner Brophy states:

8    "The following is an examiner's statement of reasons for allowance:  None of the prior art

9    of record, alone or in reasonable combination, teach the limitations:

10                wherein the system is further enabled to automatically format the

11                programmed handheld menu configuration for display as cascaded sets of

12                linked graphical user interface screens appropriate for a customized display

13                layout of at least two different wireless handheld computing device display

14                sizes in the same connected system, and

15                wherein a cascaded set of linked graphical user interface screens for a

16                wireless handheld computing device in the system includes a different

17                number of user interface screens from at least one other wireless handheld

18                computing device in the system.

19   When combined with the other limitations of claim 103, 118 and 122.  Specifically in

20   these independent claims, the menu generation software and hospitality applications, in

21   the context of the claimed system, which automatically create programmed handheld

22   displayed as cascaded sets of graphical user interface screens for at least two different

23   sizes and including at least two cascaded sets of GUIs with disparate screen counts in not

24   found in the prior art as of the priority date September 21, 1999.  No prior art of record,

25   nor any combination [] teaches all limitations of the newly amended independent claims."

26   '077 Patent Notice of Allowability  (February 2, 2012), **Ex. 22** at 17.

27        93.      Specifically, the combination of Rose, Sirola, and Hall discloses "wherein the

28   system is further enabled to automatically format the programmed handheld menu configuration

52183128.3                              - 20 -                    CASE NO.  3:12-cv-00729-JLS-NLS

DOCUMENT PREPARED
ON RECYCLED PAPER

1  for display as cascaded sets of linked graphical user interface screens appropriate for a

2  customized display layout of at least two different wireless handheld computing device display

3  sizes in the same connected system." *See* Rose, **Ex. 12** at Figs. 4, 23-24 & 5A-22, 2:26-29, 6:4-

4  34, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at Fig. 1, 2:1-21; Hall, **Ex. 14** at Fig. 1, 3:49-4:37.

5         94.    Specifically, the combination of Rose, Sirola, and Hall discloses "wherein a

6  cascaded set of linked graphical user interface screens for a wireless handheld computing device

7  in the system includes a different number of user interface screens from at least one other wireless

8  handheld computing device in the system." *See* Rose, **Ex. 12** at Abstract, Figs. 3-4, 23-24 & 5A-

9  22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at Fig. 1, 1:1-21; Hall, **Ex. 14**

10  at Fig. 1, 3:49-4:37.

11         95.    Further, for example, Rose discloses using a web server to serve hospitality

12  content as a series of related hospitality web pages. *See* Rose, **Ex. 12** at Figs. 5A–22; February

13  15, 2011 Final Office Action, **Ex. 20** at 4-5, 11-15 ("Rose et al disclose hospitality data such as

14  restaurant menus and reviews as web data display, e.g. in the form of a web page (col 9: lines 5-

15  16).").  The content of Rose can be displayed by any conventional web browser. *See* **Ex. 20** at 4-

16  5, 11-15.   Sirola and Hall each disclose wireless handheld computing devices that can be used to

17  display the web pages served by the web server of Rose. *See* Sirola, **Ex. 13** at 2:1-11; Hall, **Ex.**

18  **14** at Abstract; **Ex. 20** at 15.  Sirola and Hall each disclose a wireless handheld computing device

19  that can be used to display hospitality information. *See* **Ex. 20** at 13-15; Sirola, **Ex. 13** at Fig. 1;

20  Hall, **Ex. 14** at Fig. 1.  A web page would display one way on a Sirola handheld and another way

21  on a Hall handheld due to differences in screen size and resolutions. *Compare* Sirola, **Ex. 13** at

22  Fig. 1; Hall, **Ex. 14** at Fig. 1.

23         96.    Because the prior art teaches the elements of the claims forming the basis for

24  allowance, the '077 Patent would not have been issued if Examiner Brophy had been made aware

25  of Rose, Sirola, and Hall.

26         97.    Fabiano's knowledge of specific material contents of Rose, Sirola, and Hall is

27  made evident at least by his unsuccessful attempts to traverse Rose, Sirola, and Hall for

28  significantly similar claim limitations of the '633 Application.

98.     Such awareness triggered Fabiano's duty to under 37 C.F.R. § 1.56 to disclose to the Patent Office prior art references Rose, Sirola, and Hall.

99.     Rose, Sirola, and Hall were not made of record during prosecution the '077 Patent.

100.    On information and belief, Fabiano withheld Rose, Sirola, and Hall with a specific intent to deceive the Patent Office.

101.    On information and belief, Fabiano intentionally withheld Rose, Sirola, Hall, the February 15, 2011 Final Office Action, and the Examiner's Answer to Ameranth's Appeal Brief from the PTO with the specific intent to deceive the Patent Office during the prosecution of the '077 Patent.

102.    The '077 Patent would not have issued if Rose, Sirola, and Hall had been disclosed to Examiner Brophy.

103.    Accordingly, all claims of the '077 Patent are unenforceable due to Fabiano's inequitable conduct during the prosecution of the '077 Patent.

### *Specific Contents of Rose, Sirola, and Hall Material to the Patentability Of At Least All Elements of Claim 13*

104.    Rose, Sirola, and Hall were material to the patentability of the claims of the '990 Application because their contents render obvious at least all elements of independent claim 13 of the '077 Patent.

105.    The analysis of Examiner Wu, as reflected in the Final Office Action of February 15, 2011 (**Ex. 20**) and the Examiner's Answer to Ameranth's Appeal Brief (**Ex. 21**), describe in detail to how to apply Rose, Sirola, and Hall to claims that are very similar to the claims of the '990 Application (and thus the '077 Patent).

106.    For example, Examiner Wu's analysis of the claim limitation "non PC standard display sizes" for display of hospitality data as, recited in claims 77 and 97 of the '633 Application, illustrate how Rose, Sirola, and Hall could have been applied by Examiner Brophy to reject at least claim 13 of the '077 Patent if they had been made of record during prosecution.

107.    Fabiano had a period of 634 days, or more than 90 weeks, between July 2, 2010 (when Rose and Sirola were first cited by the Patent Office during prosecution of the '633

1  Application) and the issuance of the '077 Patent on March 27, 2012 to make Rose and Sirola of

2  record for the '990 Application (and thus the '077 Patent), but did not do so.

3         108.    Yet, the combination of Rose, Sirola, and Hall is material to the patentability of the

4  '990 Application (and thus the '077 Patent).  For example, claim 13 would have been rendered

5  obvious by the combination of Rose, Sirola, and Hall, as shown below.

6         109.    The preamble of claim 13 recites "[a]n information management and real time

7  synchronous communications system for use with wireless handheld computing devices and the

8  internet." This limitation is disclosed in Rose at the Abstract and 2:24-35.

9         110.    Element 'a' of claim 13 recites "a master database connected in said system and

10  configured to store hospitality recites information pursuant to a master database file

11  structure." This limitation is disclosed in Rose at Fig. 4, 6:44-55.  Examiner Wu identified the

12  similar element, "a master database containing at least one hospitality application(s) and

13  associated data," in Rose at 6:44-55.  **Ex. 20** at 14; **Ex. 21** at 5.

14         111.    Element 'b' of claim 13 recites "at least one wireless handheld computing device

15  connected in said system and configured to display said hospitality application information."  The

16  combination of Rose and Sirola discloses this limitation. *See* Rose, **Ex. 12** at Figs. 5A-22, 7:23-

17  25; Sirola, **Ex. 13** at Fig. 1, 2:1-21.  Examiner Wu stated that the combination of Rose and Sirola

18  discloses "application software enabled to configure hospitality data for display on the 'non pc

19  standard' display sized screen of at least one wireless handheld computing device in which the at

20  least one hospitality application is stored." *See* **Ex. 20** at 14-15; **Ex. 21** at 5-6.  In particular,

21  Examiner Wu stated that Rose discloses "application software enabled to configure hospitality

22  data for display on at least one web page" at Figs. 5A-22 and 7:23-25, and that Sirola discloses a

23  smart phone device (which is a wireless handheld computing device with non pc standard

24  display) that is capable of displaying web data at 2:1-21.  **Ex. 20** at 14-15; **Ex. 21** at 5-6.

25         112.    Element 'c' of claim 13 recites "at least one web server connected in said

26  system."  Rose discloses this limitation at Fig. 3, 6:60-64.  Examiner Wu stated that Rose

27  discloses "at least one web server enabled to interface with at least one hospitality applications

28  and its associated data" at 6:60-64.  *See* **Ex. 20** at 14; **Ex. 21** at 5.

1    113.   Element 'd' of claim 13 recites "at least one web page connected in said system

2    and configured to display said hospitality application information." Rose discloses this limitation

3    at Figs. 5A-22, 7:23-25. Examiner Wu stated that Rose discloses "application software enabled

4    to configure hospitality data for display on at least one web page" at Figs. 5A-22; and 7:23-

5    25. *See* **Ex. 20** at 14; **Ex. 21** at 5.

6    114.   Element 'e' of claim 13 recites "real time communications control software

7    enabled to link and synchronize hospitality application information simultaneously between the

8    master database, wireless handheld computing device, web server and web page." The

9    combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose, **Ex. 12** at Figs. 4, 23-

10   24, 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at Fig. 1, 2:1-21; Hall, **Ex. 14** at

11   Fig. 1, 3:49-4:37. Examiner Wu stated that the combination of Rose, Sirola, and Hall discloses

12   "wherein the system is enabled via application software to synchronize the at least one hospitality

13   application(s) and its associated data with the data in a second and different hospitality

14   application in real time between the master database, the at least one Web server, the at least one

15   wireless computing device and the at least one web page." **Ex. 20** at 14-15; **Ex. 21** at 5-6.

16   115.   Claim 13 recites "wherein the communications control software is enabled to

17   utilize parameters from the master database file structure to synchronize the hospitality

18   application information in real time between the master database, at least one wireless handheld

19   computing device, at least one web server and at least one web page such that substantially the

20   same information comprising the hospitality information is capable of being displayed on the

21   wireless handheld computing device, at least one web page and other display screens of the

22   synchronized screen, such that the hospitality application information is synchronized between

23   any connected users." The combination of Rose, Sirola, and Hall discloses this limitation. *See*

24   Rose, **Ex. 12** at Figs. 4, 23-24, & 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at

25   Fig. 1, 2:1-21; Hall, **Ex. 14** at Fig. 1, 3:49-4:37.

26   116.   Claim 13 recites "wherein the communication control software is enabled to act as

27   a real time interface between the elements of the system and any applicable communications

28   protocol." Examiner Wu stated that Rose discloses "wherein the system is enabled to perform an

DOCUMENT PREPARED
ON RECYCLED PAPER

52183128.3                                    -24-                    CASE NO. 3:12-cv-00729-JLS-NLS

PAPA JOHN'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

1    automated communications conversion via application software involving the data associated

2    with the at least one hospitality application" at 7:42-55. *See* **Ex. 20** at 14; **Ex. 21** at 5.

3    117.    Claim 13 recites "wherein the communications control software is enabled to

4    automatically and simultaneously configure the hospitality application information for display on

5    both the wireless handheld computing device and the web page in conformity with a customized

6    display layout unique to the wireless handheld computing device or the web page, wherein said

7    customized display layout is compatible with the displayable size of the handheld computing

8    device display screen or the web page." The combination of Rose, Sirola, and Hall discloses this

9    limitation. *See* Rose, **Ex. 12** at Figs. 4, 23-24 & 5A-22, 2:26-29, 6:4-34, 10:59-67, 16:1-17:18;

10   Sirola, **Ex. 13** at Fig. 1, 2:1-21; Hall, **Ex. 14** at Fig. 1, 3:49-4:37.

11   118.    Claim 13 recites "wherein the communications control software is further enabled

12   to automatically format a programmed handheld configuration for display as cascaded sets of

13   linked graphical user interface screens appropriate for a customized display layout of at least two

14   different wireless handheld computing device display sizes in the same connected system." The

15   combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose, **Ex. 12** at Abstract,

16   Figs. 3-4, 23-24 & 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at Fig.

17   1, 1:1-21; Hall, **Ex. 14** at Fig. 1, 3:49-4:37.

18   119.    Claim 13 recites "wherein a cascaded set of linked graphical user interface screens

19   for a wireless handheld computing device in the system includes a different number of user

20   interface screens from at least one other wireless handheld computing device in the system." The

21   combination of Rose, Sirola, and Hall discloses this limitation. *See* Rose, **Ex. 12** at Abstract,

22   Figs. 3-4, 23-24 & 5A-22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at Fig.

23   1, 1:1-21; Hall, **Ex. 14** at Fig. 1, 3:49-4:37; *Compare* Sirola, **Ex. 13** at Fig. 1 *with* Hall, **Ex. 14** at

24   Fig. 1.

25   120.    Claim 13 recites "wherein the system is enabled for real time synchronous

26   transmission of the configured hospitality application information to the wireless handheld

27   computing device, the web server and the web page and real time synchronous transmissions of

28   inputs responding to the configured hospitality application information from the wireless

1  handheld computing device, or the web server or the web page." The combination of Rose,
2  Sirola, and Hall discloses this limitation. *See* Rose, **Ex. 12** at Abstract, Figs. 3-4, 23-24 & 5A-
3  22, 6:4-34, 6:60-64, 7:23-25, 10:59-67, 16:1-17:18; Sirola, **Ex. 13** at Fig. 1, 1:1-21; Hall, **Ex. 14**
4  at Fig. 1, 3:49-4:37.

5      121.    Accordingly, the combination of Rose, Sirola, and Hall renders at least claim 13
6  obvious.    Therefore, Rose, Sirola, and Hall were material to the patentability of the '990
7  Application claims.

8      122.    As demonstrated in the preceding paragraphs, prior claims of the '077 Patent and
9  the pending claims of the '633 Application, which were rejected in view of Rose, Sirola, Hall,
10  and other art, recite numerous similar claim elements.

11      123.    The claims of the '077 Patent and the pending claims of the '633 Application that
12  have been rejected in view of Rose, Sirola, Hall, and other art contain numerous similar elements.

13      124.    The significant similarity between the rejected claims of the '990 Application/'077
14  Patent to claims of the '633 Application rejected in view of Rose, Sirola, and Hall, as well as the
15  analysis of Examiner Wu in the February 15, 2011 Final Office Action (**Ex. 20**) and the
16  Examiner's Answer (**Ex. 21**) to Ameranth's Appeal Brief indicate that Rose, Sirola, and Hall, as
17  well as Examiner Wu's analysis of them, were material to the patentability of the '990
18  Application. The claims of the '077 Patent would not have issued if Examiner Brophy had been
19  aware of such prior art and related analysis.

20      125.    On information and belief, prior to the issuance of the '077 Patent on March 27,
21  2012, Fabiano became aware of the materiality of Rose, Sirola, and Hall, as well as Examiner
22  Wu's reasoning in applying such prior art to reject the significantly similar pending claims of the
23  '633 Application.

24      126.    Fabiano's knowledge of specific material contents of Rose, Sirola, and Hall is
25  made evident at least by his unsuccessful attempts to traverse Rose, Sirola, and Hall for
26  significantly similar claim limitations of the '633 Application.

27      127.    Such awareness triggered Fabiano's duty to under 37 C.F.R. § 1.56 to disclose to
28  the Patent Office prior art references Rose, Sirola, and Hall, as well as Examiner Wu's analysis in

1    the February 15, 2011 Final Office Action (**Ex. 20**) and the Examiner's Answer (**Ex. 21**) to

2    Ameranth's Appeal Brief, which describe their materiality.

3           128.    Rose, Sirola, Hall, the February 15, 2011 Final Office Action, and the Examiner's

4    Answer to Ameranth's Appeal Brief were not made of record during prosecution the '077 Patent.

5           129.    Based on the foregoing facts, the only reasonable inference is that Fabiano

6    intentionally withheld from the Patent Office Rose, Sirola, Hall, the February 15, 2011 Final

7    Office Action, and the Examiner's Answer to Ameranth's Appeal Brief.

8           130.    Based on the foregoing facts, the only reasonable inference is that Fabiano

9    withheld Rose, Sirola, Hall, the February 15, 2011 Final Office Action, and the Examiner's

10   Answer to Ameranth's Appeal Brief with a specific intent to deceive the Patent Office.

11          131.    The '077 Patent would not have issued if Rose, Sirola, Hall, the Final Office

12   Action of February 15, 2011, and the Examiner's Answer to Ameranth's Appeal Brief had been

13   disclosed to Examiner Brophy.

14          132.    Accordingly, all claims of the '077 Patent are unenforceable due to Fabiano's

15   inequitable conduct during the prosecution of the '077 Patent.

16                                  **FIFTH COUNTERCLAIM**

17                                    **(Inequitable Conduct)**

18          133.    Papa John's reiterates and hereby incorporates the information of each of

19   preceding paragraphs, including the allegations in its Fourth Counterclaim (paragraphs 42-132),

20   as if fully set forth herein.

21          134.    All claims of the '077 Patent are unenforceable due to inequitable conduct during

22   the prosecution of the '077 Patent by McNally, president of Ameranth, Inc., who intentionally

23   withhold material prior art from the Patent Office with a specific intent to deceive the Patent

24   Office.

25          135.    McNally was significantly involved in the prosecution of the '990 Application.

26   McNally is a named inventor. During prosecution of the '990 Application, McNally participated

27   in examiner interviews with the Patent Office with Examiner Brophy. *See* **Ex. 2** (McNally and

28   Fabiano); **Ex. 3** (McNally and Fabiano); Patent Office Summary of July 21, 2009 Interview, **Ex.**

1 | **24** (McNally).

2 | 136.   McNally stands to benefit financially from any licensing fees or other revenue

3 | generated by the '077 Patent.

4 | 137.   McNally had a duty under 37 C.F. R § 1.56 to disclose to the Patent Office

5 | information material to the patentability of the claims of the '990 Application.

6 | 138.   McNally, a named inventor of the '077 Patent, executed a declaration

7 | acknowledging his duty under 37 C.F.R. § 1.56 to disclose information material to patentability,

8 | and to exercise "candor and good faith in dealing with the Office," and further acknowledging

9 | that "no patent will be granted on an application in connection with which fraud on the Office

10 | was practice or attempted or the duty of disclosure was violated through bad faith or intentional

11 | misconduct." *See* Declaration Under 37 C.F.R. § 1.56 by McNally, **Ex. 23** at 4.  That declaration

12 | also recites standards for patentability under Title 35, U.S. Code sections 101, 102, 103, 112 et al.

13 | *Id.* at 5-6.  McNally signed the Declaration on or about October 25, 1999. *Id.* at 3.

14 | 139.   During prosecution of the '633 Application, McNally had knowledge of Rose,

15 | Sirola, and Hall.

16 | 140.   Upon information and belief, during prosecution of the '633 Application, McNally

17 | had knowledge of Examiner Wu's analysis of Rose, Sirola, and Hall with respect to claims

18 | sharing substantial similarities with the '990 Application.

19 | 141.   During prosecution of the '633 Application, McNally had knowledge of specific

20 | content of Rose, Sirola, and Hall that was material to the patentability of the '990 Application

21 | claims.

22 | 142.   McNally, is a named inventor of the '633 Patent and was an active participant in

23 | prosecution of the '633 Application.

24 | 143.   McNally was familiar with the prosecution history of both the '990 Application

25 | and '633 Application, as well as the failed attempt to prove a conception date earlier than

26 | September 21, 1999 for the '990 Application.

27 | 144.   McNally had knowledge that  Rose, Sirola, and Hall are prior art to the '990

28 | Application/'770 Patent.

145.   During the time in which the '990 Application was still pending, McNally had knowledge that Rose, Sirola, and Hall were material to patentability of the '990 Application/'770 Patent.

146.   McNally knew that specific content in Rose, Sirola, and Hall was material to the patentability of the '990 Application/'077 Patent based on the significance of Rose to the prosecution of the '633 Application, and based on the similarity of its claims to those in the '633 Application, as well as the analysis of Examiner Wu in the February 15, 2011 Final Office Action (**Ex. 20**) and the Examiner's Answer (**Ex. 21**) to Ameranth's Appeal Brief.

147.   Rose, Sirola, and Hall are not cumulative of the prior art made of record during prosecution of the '990 Application.

148.   McNally, as an individual associated with the prosecution of the '990 Application, withheld material information to the Patent Office.

149.   Based on all the foregoing facts, the only reasonable inference is that McNally withheld Rose, Sirola, and Hall from the Patent Office with a specific intent to deceive the Patent Office.

150.   By withholding Rose, Sirola, and Hall during the prosecution of the '990 Application, McNally breached his duty of good faith and candor in dealing with the Patent Office under 37 C.F.R § 1.56.

151.   Had McNally disclosed Rose, Sirola, and Hall to the Patent Office, the '770 Patent would not have been issued.

## PAPA JOHN'S PRAYER FOR RELIEF

Papa John's, reserving its right to amend its pleading to add additional defenses, affirmative defenses, and counterclaims if warranted by discovery in this lawsuit, requests the following relief:

   a.   A judgment declaring that Papa John's has not infringed any valid and enforceable claim of the '077 Patent.

   b.   A judgment declaring that the claims of the '077 Patent are invalid as anticipated by the prior art.

DOCUMENT PREPARED
ON RECYCLED PAPER

1        c.    A judgment declaring that the claims of the '077 Patent are invalid for

2  obviousness in view of the prior art.

3        d.    A judgment declaring that Ameranth's Complaint is dismissed with

4  prejudice, and that Ameranth take nothing by its Complaint.

5        e.    An injunction enjoining Ameranth, any other party claiming rights through

6  Ameranth, and any other party in privity with Ameranth, from charging infringement of the '077

7  Patent against Papa John's and anyone in privity with Papa John's, including its successors,

8  assigns, agents, and customers if the '077 Patent are found invalid and non-infringed.

9        f.    A judgment declaring that this is an exceptional case pursuant to 35 U.S.C.

10  § 285 and an award to Papa John's of its reasonable attorney's fees and costs of suit pursuant to

11  35 U.S.C. §§ 284, 285, and all other applicable statutes, rules, and common law.

12        g.    All such other relief this Court may deem just and proper.

13  **PAPA JOHN'S JURY DEMAND**

14        Papa John's requests a jury trial for all triable issues in Ameranth's Complaint and Papa

15  John's Counterclaims to the extent allowed by the United States Constitution and the Federal

16  Rules of Civil Procedure.

17

18  Dated:    August 3, 2012

19                      JOHN A. O'MALLEY

19                      AARON D. GOPEN

20                      MARC L. DELFLACHE

20                      DUSTIN MAUCK

21                      RICHARD S. ZEMBEK

21                      **FULBRIGHT & JAWORSKI L.L.P.**

22

23                      By  s/John A. O'Malley

24                         JOHN A. O'MALLEY

24                         Attorney for Defendant Papa John's USA, Inc.

25                         E-mail:  jomalley@fulbright.com

26

27

28

DOCUMENT PREPARED ON RECYCLED PAPER

52183128.3            - 30 -            CASE NO.  3:12-cv-00729-JLS-NLS

PAPA JOHN'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
TO PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT